IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LAWRENCE SUNDERLAND, | § |
| | § |
| Plaintiff, | § |
| | § |
| V. | §   NO. 4:22-CV-742-O |
| | § |
| ASHLEE E. CHAVEZ, et al., | § |
| | § |
| Defendants. | § |

**OPINION AND ORDER**

Came on for consideration the motions to dismiss filed by Defendants Zardain, Koehn, Morath, Page, Zaloski, and Britten. ECF Nos. 17, 19, & 34. The Court, having considered the motions, the responses of Plaintiff, Lawrence Sunderland, ECF Nos. 42, 45, & 46, the replies, ECF Nos. 51 & 52, the record, and applicable authorities, concludes that Plaintiff's claims against Defendants Britten, Page, and Zardain must be **DISMISSED** and that the motions should otherwise be **DENIED**. In addition, the Court concludes that Plaintiff's motion for leave to amend should be **GRANTED**.

**I.    BACKGROUND**

On August 24, 2022, the Clerk received for filing Plaintiff's complaint in this action.[1] Plaintiff complains about events that began at approximately 11:15 a.m. on November 27, 2021, at the James V. Allred Unit. In sum, Plaintiff alleges: For the fourth day he was not allowed out-of-cell recreation or a shower. His requests to speak to a supervisor were ignored, so Plaintiff put his foot in the food tray slot to summon a ranking supervisor. A supervisor arrived and told Plaintiff

---

[1] Although the complaint bore a signature date of July 25, 2022, the envelope in which it arrived reflected that it had been returned to Plaintiff for postage.

he would not be allowed to shower. Plaintiff removed his foot from the tray slot. Thirty to forty-five minutes later, a "major use of force team" arrived, led by Defendant Chavez. She ordered Plaintiff to submit to a strip search. He complied with her orders, but she pretended that he did not and twice caused him to be sprayed in the face with chemical agents, blinding and disorienting him and causing great pain. The use of force team came into the cell and Defendants Odom, Rodriguez-Carillo, and Givens beat him. Odom broke Plaintiff's arm. Defendant Zaloski, a licensed nurse on the scene, did not stop the violence or treat Plaintiff's wounds. Plaintiff was left naked in a cell for several days. Defendant Samson repeatedly refused to get aid for Plaintiff. Defendant Morath also refused to get aid for Plaintiff. Eventually, Plaintiff was locked into a standing cage to await transport to the hospital. Defendant Koehn asked if Plaintiff was in a lot of pain and when he responded that he was, Koehn had a nurse give him one Tylenol, advising him to keep his mouth shut and not make any trouble about what had happened at the unit. Once Plaintiff arrived at the hospital, Defendant Zardain reviewed x-rays and told Plaintiff he needed an orthopedic surgeon as soon as possible. He eventually told Plaintiff he could not arrange the surgery and was returning him to the unit. Defendant Page did not respond to Plaintiff's emergency grievance for 63 days. Defendant Britten initially told Plaintiff what a lot of work it would be to realign his arm and later determined that it would be too much trouble. He refused to do the surgery.

Plaintiff has filed a motion for leave to amend his complaint. ECF No. 41. In it, he clarifies that he is suing the Defendants in their individual capacities. None of the Defendants has filed a response to the motion. The Court accepts the clarification as an amendment without the need for Plaintiff to refile his complaint.

## II.  APPLICABLE LEGAL STANDARDS

### A.  Pleading

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. *Twombly*, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. *Iqbal*, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Id.* In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In considering a motion to dismiss for failure to state a claim, the court may consider documents attached to the motion if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). The court may also refer to matters of public record. *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). This includes taking notice of pending judicial proceedings. *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 481 n.1 (5th Cir. 2003). And, it includes taking notice of governmental websites. *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005).

### B.  Qualified Immunity

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For a right to be "clearly established," that right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *Anderson*, 483 U.S. at 639-40. In *Harlow*, the Supreme Court explained that a key question is "whether that law was clearly established at the time an action occurred," because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." 457 U.S. at 818. In assessing whether the

4

law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not. *Elder v. Holloway*, 510 U.S. 510, 512 (1994). If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276-80 (5th Cir. 1992). In so doing, the court should not assume that the plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be certain that, if the facts alleged by the plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989). Even if defendants are alleged to have acted in unison, the court must address the actions of each individually to determine whether qualified immunity applies. *Cass v. City of Abilene*, 814 F.3d 721, 730-31 (5th Cir. 2016); *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007); *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. In *Hunter*, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Malley*, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued.

502 U.S. at 229. "[A]n allegation of malice is not sufficient to defeat immunity if the defendant

acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352-53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. *Kovacic v. Villareal*, 628 F.3d 209, 211-12 (5th Cir. 2010); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). Although Supreme Court precedent does not require a case directly on point, existing precedent must place the statutory or constitutional question beyond debate. *White v. Pauly*, 137 S. Ct. 548, 551 (2017). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality, but must be particularized to the facts of the case. *Id.* at 552. Thus, failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.*; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017).

### C.   Deliberate Indifference

The Eighth Amendment proscribes cruel and unusual punishments, which the Supreme Court has interpreted to include deliberate indifference to serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). For deliberate indifference to rise to the level of a constitutional violation, the plaintiff must establish that the defendant knew of and disregarded an excessive risk to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The defendant "must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Id.* A defendant's "failure to alleviate a significant risk that he should have perceived but did not" does not constitute a constitutional violation. *Id.* at 838. Deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires the plaintiff to show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino*, 239 F.3d at 756). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.[2]

### III. ANALYSIS

#### A. Dr. Britten

Dr. Britten urges two grounds in support of his motion to dismiss. First, Plaintiff failed to exhaust his administrative remedies as to the claims against Dr. Britten. Second, Plaintiff has alleged nothing more than a disagreement with Dr. Britten's medical treatment. ECF No. 34. The Court need not address the first ground, because it is clear that Plaintiff has not pleaded sufficient facts to state a claim of deliberate indifference against Dr. Britten.

Plaintiff alleges that he saw Dr. Britten, an orthopedic specialist, on December 22, 2021. ECF No. 1 at 21.[3] Dr. Britten explained how he would have to do the surgery, complaining that

---

[2] The cases cited by *Gobert* do not explain what such exceptional circumstances might be. Whether to provide additional treatment is a classic example of a matter for medical judgment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).
[3] The reference is to "Page __ of 24" reflected at the top right portion of the document on the Court's electronic filing system.

he would have "to scrape callous grown around broken pieces of bone before using metal plates and screws" to set the bone. *Id.* at 21–22. His complaints arose out of the twenty-seven-day delay between the injury and seeing Plaintiff. *Id.* at 22. He scheduled surgery for the following week. Thereafter, Plaintiff had a positive COVID test and the surgery was canceled. When Plaintiff saw Dr. Britten again, on January 26, 2022, Dr. Britten told him that it would be too much trouble to scrape off all the callous growth and that the bone would have to heal as it was. He told Plaintiff that the surgery would not be happening "for now," but that he would see him again in two weeks for more x-rays. Instead, Plaintiff was returned to his unit. *Id.*

At best, Plaintiff has alleged a disagreement with Dr. Britten's medical opinion that Plaintiff did not need surgery at a particular point in time in order for his arm to heal. Plaintiff has not pleaded any facts to show that Dr. Britten was responsible for the delay in examinations either before or after the December 22 visit. He has not pleaded any facts to show that Dr. Britten was deliberately indifferent to his serious medical needs, i.e., refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct. *Gobert*, 463 F.3d at 346; *Domino*, 239 F.3d at 756. According to Plaintiff, Dr. Britten expected to see him again in two weeks for further evaluation. ECF No. 1 at 22. Plaintiff has not pleaded any facts to show that Dr. Britten refused to treat him further.

### B. Defendants Koehn, Page Zaloski, and Morath

Defendants Koehn, Page, Zaloski, and Morath were employees of Texas Tech University Health Sciences Center ("TTUHSC") at all times relevant to the claims asserted. ECF No. 19 at 4. A suit against a person in his official capacity is a suit against his employer. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). TTUHSC is an agency of the State of Texas, and, as such, is immune

8

from suit pursuant to the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Texas has not waived its sovereign immunity. *Cox. v. Texas*, 354 F. App'x 901, 902–03 (5th Cir. 2009). Apparently recognizing this, Plaintiff has clarified that he did not and does not intend to assert any official capacity claims. ECF No. 41. Accordingly, this ground of the motion, ECF No. 19, is moot.

Defendants Koehn and Page maintain that Plaintiff has not alleged that they were deliberately indifferent to his medical needs. ECF No. 19 at 4–6. They also say that they are entitled to qualified immunity. *Id.* at 6–7.[4] As for Defendant Koehn, the Court is satisfied that Plaintiff has pleaded a claim. Koehn obviously knew what had happened to Plaintiff given his directive to Plaintiff to keep his mouth shut. And, ordering one Tylenol when emergency room personnel ordered "powerful morphine pain killer" indicates that Koehn intentionally treated Plaintiff incorrectly or evinced wanton disregard for his medical needs. ECF No. 1 at 18–19. Koehn's argument that he is entitled to qualified immunity is based on the contention that Plaintiff failed to plead a claim against him. Accordingly, that ground of the motion fails.

As for Defendant Page, Plaintiff appears to contend that Page is responsible for the delay in medical care from the date of the use of force until Plaintiff was sent to the hospital on December 2, 2021, and again from that date until he saw an orthopedic surgeon on December 22, 2021. *Id.* at 20–21. However, he does not allege any facts to show that Page deliberately delayed or denied medical treatment. *See Dickerson v. Murray*, No. 9:11cv78, 2012 WL 1314216, at *11 (E.D. Tex. Feb. 28, 2012) (delay of 26 days before seeing a specialist is not a deprivation of rights), *adopted*, 2012 WL 1314109 (E.D. Tex. Apr. 16, 2012). In fact, Plaintiff has not alleged any facts to show

---

[4] The motion does not address claim against Defendants Zaloski and Morath in their individual capacities. ECF No. 19 at 1.

Page's personal involvement except that Page signed a response to a grievance.[5] *See* ECF No. 1 at 21 (referring to events "on [Page's] watch" and "under medical administration" and "responsibility" of Page). Instead, it appears that Plaintiff is dissatisfied with the handling of that grievance,[6] but he does not have a constitutional right to have grievances resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Based on the facts pleaded, Plaintiff has not stated a claim under § 1983 against Page. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (doctrine of *respondeat superior* does not apply in a § 1983 action).

Finally, the TTUHSC Defendants urge that Plaintiff is not entitled to injunctive relief against them. For the reasons discussed in the motion, ECF No. 19 at 7–9, Plaintiff has not pleaded facts to establish that such relief would be authorized or appropriate.

### C. Dr. Zardain[7]

Defendant Zardain was the treating physician in the emergency room on December 2, 2021. Plaintiff alleges that Dr. Zardain reviewed x-ray images and told him that he would need an orthopedic surgeon as soon as possible to repair the femur in his right arm. ECF No. 1 at 19. Dr. Zardain returned several times over the course of six to eight hours and told Plaintiff he was trying to schedule him for surgery "now." *Id.*; ECF No. 42 at 1 (noting that the emergency room doctor

---

[5] A party cannot supplement his pleadings in his response to a motion to dismiss. *Mun. Employees' Ret. Sys. v. Pier 1 Imports, Inc.*, 935 F.3d 424, 436 (5th Cir. 2019). The Court is not considering new facts alleged in Plaintiff's reply as supplementing his complaint. ECF No. 42.

[6] The grievance reflects that the response was signed by Page on December 20, 2021, ECF No. 1-1 at 24, but not returned to Plaintiff until February 10, 2022. *Id.* at 23. In any event, the response reflects that Plaintiff had been approved for an orthopedic specialty consult and Plaintiff admits that the consult occurred on December 22, 2021. ECF No. 1 at 21.

[7] The Court is perplexed as to why this Defendant relies primarily upon state law in support of his motion to dismiss. ECF No. 17. Further, the argument that Dr. Zardain is not a state actor, raised for the first time in his reply, ECF No. 51, comes too late. Nevertheless, for the reasons discussed, Plaintiff has not pleaded facts to show deliberate indifference to serious medical needs by Dr. Zardain. Thus, those claims must be dismissed.

"spent hours trying to schedule the orthopedic appointment immediately"). Ultimately, Dr. Zardain was "unable to get [Plaintiff] scheduled right away." ECF No. 1 at 19. When questioned by Plaintiff as to why the surgery could not be done at that facility, Dr. Zardain said they "did not have an orthopedic surgeon or necessary facilities there to do it." *Id.* Plaintiff learned upon his return to the unit that the hospital routinely performed such operations. *Id.* That such operations were routinely performed at the hospital, if that is true,[8] does not mean, however, that Dr. Zardain could have scheduled surgery the day he saw Plaintiff. Nor does it mean that Dr. Zardain was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff has not pleaded facts to support such a claim. To the contrary, Plaintiff seems to recognize that Dr. Zardain did all he could to help Plaintiff on December 2, 2021.

## IV. CONCLUSION

For the reasons discussed, the motions of Defendants Britten, Page, and Zardain are **GRANTED** and Plaintiff's claims against them are **DISMISSED**. Plaintiff's request for injunctive relief against the TTUHSC Defendants is **DISMISSED**. The motions to dismiss are otherwise **DENIED**. The Court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of the claims against Defendants Britten, Page, and Zardain.

Plaintiff's motion for leave to amend is **GRANTED** and, as stated herein, the Court accepts the clarification that Plaintiff is suing Defendants in their individual capacities only.

**SO ORDERED** this **23rd day** of **February, 2023**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[8] Plaintiff says he learned this from a nurse who had formerly worked at the hospital, but there is no allegation as to when that might have been.

11